## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARY MCKENZIE TRUST, et al.,

      Plaintiffs,

v.

DETECTIVE BARTLE, et al.,

      Defendants.

Case No.  12-14412

HON. DENISE PAGE HOOD

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS DETECTIVE BARTLE AND
## WATERFORD TOWNSHIP'S
## MOTION FOR SUMMARY JUDGMENT [#67]

## I.      INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by Defendants

Bartle and Waterford Township **[Docket No. 67, filed July 25, 2014]**.  Plaintiffs

Mary McKenzie Trust, Michael Perry (individually and as trustee for the Mary

McKenzie Trust), American Cycle Mart, Inc., American Discount Cycle Mart, Inc.,

MC Perry Enterprises, Inc., HMP Family LLC, and Car Buyer Direct, Inc. filed a

Response to the Motion for Summary Judgment **[Docket No. 79, filed September

15, 2014]**.  Defendants Bartle and Waterford Township filed a Reply to the

1

Response **[Docket No. 82, filed September 29, 2014]**.

**II.     BACKGROUND**

On October 5, 2012, Plaintiffs filed the Complaint in this case.  An

Amended Complaint was filed on March 29, 2013 (Doc. # 19), containing seven

counts: (1) 4th Amendment violation under 42 USC § 1983; (2) 5th Amendment

violation and 14th Amendment violation under 42 USC § 1983; (3) Municipal

Liability under 42 USC § 1983; (4) Conspiracy to violate civil rights; (5)

Conversion; (6) Abuse of Process; and (7) Intentional Interference With

Advantageous Economic Relationships. The Complaint alleges that Plaintiff was a

successful businessman who had operated a variety of enterprises, which included

repairing motor vehicles, selling and repairing motors vehicles, selling motorcycle

apparel parts and accessories and leasing property.  In 2004, Plaintiff  moved his

business to a larger location, with more space and the ability to set up displays

outdoors.

In 2008, Plaintiff Michael Perry ("Perry") is alleged to have been operating a

motorcycle dealership in Waterford Township.   The name of that dealership is

unclear though Defendants state that the business records indicate the name to be

"American Cycle Mart."  Defendants assert that the license the dealership was

operated under was for "American Discount Cycle Mart Inc" but that both

2

companies, American Cycle Mart, Inc. ("ACM") and American Discount Cycle Mart, Inc. ("ADCM"), exist independent of one another.

The license issued for ADCM was issued to Perry's ex-wife and Co-Defendant, Cheryl Chuby ("Chuby").  Only Chuby was listed as a corporate officer on the application for ADCM and only Chuby was issued a dealer's license. Defendants note that the tax filings for ADCM for the years 2004 and 2005 also indicate that Chuby owned all of ADCM's stock.

On November 10, 2008, Perry filed a report with the Waterford Township Police Department that property, including trailers, motorcycles, and motorcycle parts, had been stolen from ACM.  Perry reported that he had located the stolen property and that it was being stored  in Wixom, Michigan. Perry reported that Chuby had taken the property.  Defendant Detective Bartle followed up on Perry's claims and contacted the Wixom Police Department.  Detective Bartle was informed that the property Chuby had taken was licensed to her.  Detective Bartle spoke to Chuby and confirmed that all of the business licenses, including the dealer's license for ADCM, were held in her name and determined that no action should be taken against Chuby because she was the licensed holder of the property.


Prior to Perry's report of stolen goods, the Waterford Township Police

3

Department had received various reports from customers of ACM and Perry that they had "not received money owed to them for the sale of their motorcycles or received titles to the vehicles they had purchased." Detective Bartle's investigation ultimately led to the arrest, prosecution, and no contest plea of Perry to seven different counts, including larceny by conversion, embezzlement, and intent to pass false title.

Defendants filed a summary judgment motion arguing that: (1) Plaintiffs lack standing to sue; (2) the *Heck* doctrine precludes Plaintiffs from challenging the search warrants; (3) many of Plaintiffs claims are barred by the statute of limitations; (4) Detective Bartle is entitled to qualified immunity; (5) Waterford Township is entitled to immunity; and (6) Detective Bartle is entitled to qualified immunity regarding the state law claims.

Plaintiffs counter that they do have standing to bring this suit and a challenge to the search warrants does not impugn Perry's criminal conviction. They also maintain that neither Detective Bartle nor Waterford Township are entitled to qualified immunity.

On December 10, 2015, Plaintiffs dismissed Defendant Chuby.

## II.   STANDARD OF REVIEW

A court should grant summary judgment if "the movant shows that there is

4

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id*. at 248.  A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  See, *Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir.

5

2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## III.   ANALYSIS

### A.      Standing

First, Defendants contend that Plaintiff HMP Family, LLC (hereinafter "HMP"), does not have standing to be involved in this lawsuit.  HMP was not a legal entity until 2010, and the assets at issue were allegedly converted and stolen in November 2008.  The assets could not have been taken from HMP since it did not exist at the time.

Plaintiffs state that HMP does have standing because prior to her death, Perry's mother, loaned ACM money and secured those loans by placing liens on motorcycles owned by ACM. When Perry's mother died, assets from her estate,

6

which included the accounts receivable, were used to create HMP. HMP is a

successor in interest and has the ability to challenge the alleged illegal seizure of

property.

There is a question of fact as to whether HMP has standing. A successor in

interest is defined as "someone who follows another in ownership or control of

property. A successor in interest retains the same rights as te original owner, with

no change in substance." Bryan A. Garner, *Black's Law Dictionary* 1660 (10th ed.

2014). Since HMP stands in the shoes of Perry's mother, it may have a lien on the

property that was allegedly illegally seized. The parties do not cite any case law

that support their positions. The Court did not find any caselaw that answers this

decisive question. Summary judgment is denied regarding the proposition that

HMP lacks standing.

Second, Defendants argue that the Mary McKenzie Trust (the "Trust") does

not have standing as to any claim in this lawsuit that is a derivative of its

ownership interest in the other named Plaintiff corporations.  The Trust claims

ownership interests in MC Perry Enterprises, Inc. ("MCP"), ACM, ADCM, and

Car Buyer Direct, Inc. ("CBD").  As a shareholder of the entities, the Trust does

not have standing in this lawsuit.  Rather, the corporation must bring suit for

injuries sustained by the corporation.

7

Plaintiffs concede that because the individual named corporations are suing in their corporate capacity, the Trust as a shareholder, lacks standing to pursue claims for alleged injuries to ACM and MCP because "an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation." *NBD Bank, N.A. v. Fulner*, 109 F.3d 299, 301 (6th Cir. 1997). Summary judgment is granted as it pertains to the Trust seeking any redress for injuries suffered by ACM or MCP.

This means that the only Plaintiffs that remain are Perry, the Trust, ADCM, CBD, and HMP.

Third, Defendants contend that all the Plaintiffs do not have standing to contest the seizure of the four vehicles involved because Plaintiffs did not have a legally-protected interest in the 2000 Ford Expedition, the 2003 Suburban, the 2004 Lincoln Navigator or the 2001 GMC Truck.  The vehicles were each purchased under the dealer licenses issued to Chuby for ADCM, and when the dealer license was terminated in 2008, the title went to the owner of the dealer license, who was Chuby.  As for the 2001 GMC Truck, the application for title shows that Security Federal Credit Union had a secured interest in the vehicle and repossessed it for nonpayment in 2010.

Plaintiffs lack standing to challenge all seizures except the 2000 Ford

Expedition. As explained below, Plaintiffs' claims regarding the other vehicles are barred by the statute of limitations.

**B.      Statute of Limitations**

Defendants claim that many of Plaintiffs' claims are barred by the statute of limitations. The Court agrees. In Michigan, the statute of limitations for 42 U.S.C. § 1983 claims is three years (M.C.L. § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986)).  A claim for an illegal search and seizure accrues on the date of the alleged illegal search and seizure (*Harper v. Jackson*, 293 Fed. App'x 389, 392 n. 1 (6th Cir.2008); *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008)). Plaintiffs filed this lawsuit on October 5, 2012. Therefore, Plaintiffs can only contest actions that occurred after October 5, 2009.  The following actions are barred by the Statute of Limitations:

- Search of Perry's home and business on April 1,2009 pursuant to a warrant;

- Seizure of CBD's and the Trust's 2003 Suburban on April 1, 2009;

- Seizure of CBD's 2004 Lincoln Navigator on March 2, 2009.

- Failure to investigate the theft or secure the stolen property taken by Co-Defendant Chuby, where Defendant Bartle informed Mr. Perry on *February 18, 2009* that the matter property was stolen and was not a

9

criminal matter.

- Seizure of a 2003 Suburban on April 1, 2009.

- March 2,2009 seizure of the 2004 Lincoln Navigator.

- Allegations that Defendant Bartle and Co-Defendant Chuby acted in concert from November 2008 through the present.

`Defendants argue that Count V for Conversion, and Count VI for Abuse of Process are subject to a three-year statute of limitations under Michigan law. All acts of dominion, including seizing the vehicles and property, that took place prior to October 5, 2009, are barred by this limitations period. Similarly, all of Plaintiffs abuse of process allegations that occurred prior to October 5, 2009, are barred.

As result of the statute of limitations, the only remaining claims are: (1) Seizure of the 2000 Expedition; (2) Bartle's alleged warrantless entry onto Perry's driveway; (3) civil conspiracy; (4) municipal liability for Waterford Township; and (5) state law tort claims against Perry.

**C.   Fourth Amendment Claims**

      **1.   Bartle's entry of driveway and alleged entry into garage and qualified immunity**

Plaintiffs allege Bartle violated their civil rights under the Fourth Amendment when he conducted a warrantless search of Perry's driveway and garage and took photographs. Defendants argue that  Bartle is entitled to qualified

immunity because Defendant Bartle only entered Perry's driveway on October 8, 2010, and took photographs of vehicles in the driveway and open garage. Defendants contends Bartle never entered the garage. Defendants state that individuals do not have a reasonable expectation of privacy in their driveways if the driveway is readily accessible and visible to the public. *See United States v. Smith*, 783 F.2d 648, 651 (6th Cir. 1986). As a result, they argue Bartle's conduct did not violate the Fourth Amendment.

Qualified immunity protects state actors sued under § 1983 for damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231(2009) (quotation marks omitted). The determination of whether a government official is entitled to qualified immunity is a two-step inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Miller v. Sanilac Cnty*., 606 F.3d 240, 247 (6th Cir.2010) (internal quotation marks and citations omitted).

Defendants contend that Perry's driveway is not protected under the Fourth Amendment. They also contend that Bartle did not enter the garage, but Plaintiffs allege Bartle did enter the garage.

11

To determine if an area is protected under the Fourth Amendment the court must consider "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life. *Knott v. Sullivan*, 418 F.3d 561, 572 (6th Cir. 2005). "Whether a driveway is protected from entry by police officers depends on the circumstances." *United States v. Smith*, 783 F.2d 648, 651 (6th Cir. 1986). "The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy." *Id*. Garages, depending on their proximity may be protected under the Fourth Amendment. *See, Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir. 1998).

There is a material question of fact as to whether Bartle's entry into the driveway and possibly the garage violated the Fourth Amendment. First, Defendants say Bartle entered the driveway which is not protected under the Fourth Amendment. They also allege he did not enter the garage. Plaintiffs disagree and say that Bartle did enter the garage and the driveway is protected. These diverging accounts create an issue of material fact. Since there is a question of fact regarding whether a constitutional violation occurred, there remains a question of fact of whether Bartle is entitled to qualified immunity regarding his entry into the driveway and alleged entry into the garage.

12

Summary judgment is denied to Defendants regarding Plaintiffs' Fourth Amendment Warrantless entry claim.

### 2.    Alleged Seizure of 2000 Expedition

Plaintiffs allege the 2000 Expedition was illegally seized.  Defendants argue that the seizure of the 2000 Ford Expedition was reasonable, because Defendant Bartle knew that the vehicle had been purchased under the ADCM dealer license, which had closed, and the vehicle was not registered with the state.  Defendant Bartle had probable cause to suspect the vehicle was being driven without valid registration and, therefore, was authorized to seize it under Mich. Comp. Laws § 257.252d(e). Mich. Comp. Laws Ann. § 257.252d (West) states a vehicle may be seized by law enforcement "if the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime." Under Mich. Comp. Laws Ann. § 257.904 it is illegal to operate a motor vehicle upon a highway without proper registration.

Defendants further argue that Plaintiffs lack standing to challenge the seizure since the vehicle legally belonged to Chuby as she was the only holder of the dealer license.

Plaintiffs allege the 2000 Ford Expedition was illegally seized. They argue that nothing in the Mich. Comp. Laws § 257.252d(e) or Mich. Comp. Laws §

257.904 states that officers must seize vehicles. They assert that they do have a property interest in the vehicle because even though the dealer license was closed, there is no law that states the vehicles must be re-titled. However, Plaintiffs did not present any title or registration for the vehicle.

Plaintiffs illegal seizure claim must be dismissed because they lack standing. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.' " *United States v. Gant*, 112 F.3d 239, 241 (6th Cir.1997) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "[A] seizure threatens an individual's distinct interest in retaining possession of his or her property." *Thomas v. Cohen* 304 F.3d 563, 569–70 (6th Cir.2002). Individuals have no standing to contest a seizure when they lack a proprietary or possessory interest. *Brown v. United States*, 411 U.S. 223, 229 (1973).

Licensing of Vehicle Dealers section 1-11.2 states "any vehicles owned at the time of closing must be titled in the dealer's name and sales tax paid" (Ex. 25 Doc. # 68-8 at 10). The Michigan Vehicle Dealer closeout statement states that any remaining vehicles must be sold or titled and registered to owner of the dealer license. (Ex. 22 Doc. # 68-5 at 2). Chuby was the owner of the dealer license. The 2000 Ford Expedition clearly was not sold, therefore, it needed to be titled and

14

registered to Chuby. Accordingly, Plaintiffs do not have a property interest in the 2000 Ford Expedition. Plaintiffs have presented no material question of fact or law.

### D.    Fifth Amendment Due Process Claims

Plaintiffs due process claims fail for the same reason that their Fourth Amendment seizure claim fails. They lack standing to challenge because they do not have a possessory interest in the property that was allegedly taken without due process.

### E.  Actions of Third Parties

Plaintiffs seek to impose liability on Defendant Bartle for the acts of Sylvan Lake Police Department and Security Federal Credit Union, after the Sylvan Lake Police Department detained Plaintiff Perry and the Security Federal Credit Union repossessed the 2001 GMC vehicle in which it had a secured interest.

Defendant Bartle cannot be held liable for the actions of these third parties, because claims against an individual defendant must be based on his or her own acts or omissions (*See Gibson v.Matthews,* 926 F.2d 532, 535 (6th Cir. 1991)). Accordingly, any claim that Bartle is responsible for the acts of Sylvan Lake Police Department and  Security Federal Credit Union must fail.

### F.  42 U.S.C. § 1983 Claims Against Waterford Township

Plaintiffs assert claims against Waterford Township claiming that it has a custom or policy which enabled Detective Bartle to violate Plaintiffs' civil rights under § 1983. Defendants argue that Defendant Waterford Township should not be held liable for violations of a constitutional right since Plaintiffs have not pleaded facts sufficient to support such a claim.

A plaintiff asserting a § 1983 claim under Monell "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir.2013); *Monell*, 436 U.S. at 694. A plaintiff must show that his constitutional rights were violated and that a policy or custom of the county was the "moving force" behind the deprivation of his rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir.2010). Accordingly, a plaintiff must demonstrate one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiff did not identify a custom or policy that Waterford Township supposedly has that was the moving force behind Plaintiffs deprivations of civil

16

rights. The claims fail because Plaintiffs have not provided evidence of any unconstitutional policy connected to Waterford Township that caused them injury. Plaintiff states that it needs more discovery in order to uncover the alleged unconstitutional policy. However, discovery was closed in June 2014 and Plaintiffs have yet to file any motions to compel discovery. Since Plaintiffs failed to identify a policy the claim fails.

### G.    State Tort Claims and Qualified Immunity

Plaintiffs accuse Defendant Bartle of Conversion, Abuse of Process, and Intentional Interference with Advantageous Economic Relationships. Defendants argue that under Michigan law, Defendant Bartle is entitled to qualified immunity from intentional torts as a governmental employee (*See Odom v. Wayne County*, 760 N.W.2d 217, 224 (Mich. 2008); *Ross v. Consumers Power Co.*, 363 N.W.2d 641,667 (Mich. 1984); *Romo v. Largen*, 723 F.3d 670,676 (6th Cir. 2013)).

The Michigan Supreme Court has noted:

> Lower-level governmental officials and employees were
> afforded qualified immunity from all tort liability if they
> met all the following conditions: (1) the acts were taken
> during the course of employment and the employees were
> acting, or reasonably believed that they were acting,
> within the scope of their authority, (2) the acts were taken
> in good faith, and (3) the acts were
> discretionary-decisional, as opposed to
> ministerial-operational.

(*Odom*, 760 N.W.2d at 480).

Plaintiffs have not pointed to any evidence in the record that indicates that Defendant Bartle was acting outside of the scope of his authority. When he allegedly seized the vehicles and returned them to Chuby he was doing so in his capacity as a law enforcement officer. Plaintiffs state that Bartle's actions were not taken in good faith because they contend that Plaintiff Perry and his attorney presented evidence to Bartle that he had an ownership interest in some of the vehicles, but Bartle refused to examine the documents. However, Plaintiffs do not present any of the documents in the record.

Nor have Plaintiffs shown that Bartle's actions were ministerial and operational as opposed to discretionary and decisional. For these reasons, Defendant Bartle is entitled to qualified immunity on the state tort claims.

### H.    Civil Conspiracy

Plaintiffs allege that Defendants Bartle, Chuby, and unknown others, violated their civil rights by engaging in a civil conspiracy to convert, steal, transfer and seize "with or without warrants the filing of false applications for title to Plaintiffs' property." (Doc. # 19 at 14).

Defendants argue that there was no conspriacy because there was nothing to conspire about. Bartle confirmed that Chuby held the dealer license and returned

18

the cars to her. Chuby was the only individual who had a property interest in the cars.

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)(quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Plaintiffs are entitled to "rely on circumstantial evidence to establish an agreement among the conspirators." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir.2012). However, "conspiracy claims must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (*citing Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)

Plaintiffs failed to create a material question of fact regarding whether a civil conspiracy existed between Chuby and Bartle. They make conclusory allegations that Chuby did not own the dealer license and Bartle failed to conduct a thorough investigation. Specifically, Plaintiffs point to the fact that Bartle did not review

certain records, but failed to produce those documents in the record. Plaintiffs fail to point to any specific evidence of a common plan or objective. Moreover, Plaintiffs failed to present anything amounting to a constitutional violation arising out of the alleged conspiracy. Although there remains a question of fact regarding Bartles alleged warrantless entry into Perry's driveway, the complaint does not allege that the warrantless entry forms a basis for the civil conspiracy claim. This claim is dismissed.

## IV.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants Bartle and Waterford Township (Doc. # 67) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that all claims against Waterford Township have been dismissed and judgment shall be entered in favor of Waterford Township with respect to all claims asserted against Waterford Township.

**IT IS FURTHER ORDERED** that the only remaining claim in this action is the Fourth Amendment claim against Bartle for conducting a non-consensual, warrantless search of Perry's driveway and garage, as alleged in Count I.

**IT IS FURTHER ORDERED** that a status conference is set for Tuesday,

November 1, 2016 at 2:30 p.m.

**IT IS SO ORDERED.**


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  September 30, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager